# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>Michael Matthews,<br><br>　　　　　　　Defendant. | Case No. 19-cr-00012 (ECT/HB)<br><br><br>**REPORT AND RECOMMENDATION** |

HILDY BOWBEER, United States Magistrate Judge

　　　This matter came before the undersigned United States Magistrate Judge for a pretrial motions hearing on March 4, 2019.  The case has been referred to this Court for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1.  In this Report and Recommendation, the Court will address Defendant Michael Matthews' Motion for Suppression of Evidence Obtained as a Result of Search and Seizure [Doc. No. 25].

## I.　　Procedural Background

　　　On January 16, 2019, a grand jury indicted Michael Matthews with one count of Felon in Possession of a Firearm – Armed Career Criminal, in violation of 18 U.S.C. § 922(g)(1) and § 924(e)(1).  (Indictment [Doc. No. 13].)  On March 4, 2019, this Court held an evidentiary hearing on Matthews' pretrial motions.  The Government introduced the following exhibits:

1

Exhibit 1: Google map of 25xx Fremont Avenue North and neighborhood;
Exhibit 2: Photograph of apartment building at 25xx Fremont Avenue North;
Exhibit 3: Photograph of Cadillac; and
Exhibit 5[1]: Search warrant, affidavit, and return.

The Government called two witnesses from the Hennepin County Sheriff's Department: Deputy Darrin Zastera and Deputy Kelly Howe. These witnesses testified about the stop and search of Matthews and his vehicle on January 3, 2019.

Matthews filed a post-hearing memorandum of law in support of his motion to suppress on March 27, 2019 [Doc. No. 40]. The Government filed a memorandum of law in opposition on April 4, 2019 [Doc. No. 41]. The Court took the motion to suppress under advisement on April 4, 2019.

## II.    Factual Background

On December 28, 2018, a state search warrant was issued for the following described premises and motor vehicles:

> 25[xx] Fremont Ave N. Apt #3, all storage units directly associated with Apt. #3, any attached or detached garages directly associated with Apt. #3, any person found inside the apartment at the time the warrant is executed *and any vehicle parked on or near 25[xx] Fremont Ave N* that is register[ed] to Michael NMN Matthews . . . identified as a 2007 Cadillac DTS MN 681UAT . . . .

(Gov't Ex. 5) (emphasis added). The warrant authorized a search for controlled substances and related items, and firearms. (*Id.*)

On January 3, 2019, officers with the Violent Offender Task Force of the Hennepin County Sheriff's Office established surveillance at 25xx Fremont Avenue

---

[1] The Government did not introduce an Exhibit 4.

North to execute the search warrant. (Hr'g Tr. ("Tr.") 7:12–8:3 [Doc. No. 37].) Deputy

Zastera was assigned surveillance duty and knew the search warrant was for the seizure

of weapons and narcotics. (Tr. 8:24–9:2.) Prior to initiating surveillance, Deputy Zastera

reviewed a photograph of Matthews and noted his height, weight, race, and hairstyle.

(Tr. 8:22–23, 20:25–21:1, 21:7–12.)

Deputy Zastera arrived at 25xx Fremont Avenue North around 4:30 a.m. and saw

a Cadillac four-door sedan bearing Minnesota license plate 681UAT parked under a street

lamp in front of the building. (Tr. 9:25–10:1, 12:10–17; *see also* Gov't Ex. 2.) He

parked his vehicle just north of 26th Avenue, and other officers positioned themselves

around the neighborhood. (Tr. 13:2–7, 15:15–22, 17:13–25.) Around 5:15 a.m., Deputy

Zastera observed a black male, wearing a hat, jacket, and long pants, exit the apartment

building and get into the driver's seat of the Cadillac. (Tr. 14:4–10). Deputy Zastera

believed this man was Matthews because "the height and weight matched, it's a black

male, and he approached the vehicle that [was] registered to Matthews." (Tr. 21:9–14.)

Deputy Zastera later positively identified the individual as Matthews. (Tr. 15:1–10.)

Matthews exited the Cadillac after about five seconds and walked to the back of

the vehicle. (Tr. 14:12–14.) Deputy Zastera lost sight of Matthews for another five

seconds due to parked cars in his line of sight. (Tr. 14:14–22.) Matthews then re-entered

the Cadillac and drove away. (Tr. 14:22–25, 15:11–14.) Deputy Zastera learned from

radio transmissions that the Cadillac had a missing headlight and that Matthews was

circling the block in a manner that indicated counter-surveillance maneuvers. (Tr. 16:8–

17:3.) Deputy Zastera saw a vehicle with one headlight return to the area and park. (Tr.

3

16:20–17:6.)  The car parked a block away from the apartment address, about 50 yards

behind Deputy Zastera.[2]  (Tr. 17:6–10; *see also* Gov't Ex. 1.)

A police dispatcher instructed officers near the scene to stop the Cadillac, and

Deputy Kelly Howe responded.  (Tr. 26:17–23, 27:12–22.)  Deputy Howe saw the

vehicle stopped on Fremont Avenue North ahead of him.  (Tr. 29:7–8.)  He later learned

the Cadillac had an inoperative headlight but did not remember the dispatcher giving that

information.  (31:12–23.)  Deputy Howe activated his squad car's lights and approached

the Cadillac because of the dispatcher's instructions, not an inoperative headlight.  (Tr.

32:7–10.)  When Deputy Howe activated his lights, he observed Matthews open the

driver's side door and look to his left outside the vehicle.  (Tr. 29:14–17.)  Deputy Howe

visually confirmed the driver was Matthews from a photograph he had seen at an earlier

briefing.  (Tr. 29:19–22.)

Deputy Howe instructed Matthews to exit the vehicle and conducted a pat-down

search to ensure officer-safety.  (Tr. 29:22–24.)  During the pat-down, Deputy Howe

discovered a package that contained multiple small bags of white powder, which Deputy

Howe identified as narcotics.  (Tr. 30:1–31:4.)  Deputy Howe placed Matthews under

arrest.  (Tr. 31:6–8.)  Officers later searched the Cadillac and recovered a loaded Glock

semi-automatic handgun from the trunk, along with paperwork bearing Matthews' name.

(Gov't Ex. 5.)

---

[2]  It is reasonable to infer from Deputy Zastera's and Deputy Howe's testimony that this
car was the Cadillac driven by Matthews.

III.    **Discussion**

Matthews seeks to suppress all evidence seized during the search of the Cadillac.

A.    **Whether the Search of the Cadillac Was Outside the Scope of the Warrant**

The search warrant authorized the officers to search "any vehicle parked *on or near* 25[xx] Fremont Ave N that is register[ed] to Michael NMN Matthews . . . identified as a 2007 Cadillac DTS MN 681UAT . . . ."  (Gov't Ex. 5) (emphasis added).  Matthews' Cadillac matched the description on the warrant and was originally parked at 25xx Fremont Avenue North, when Deputy Zastera first observed it on the day of the search. Matthews moved the Cadillac about a block away later that morning, and the car was searched shortly after.  The operative question is whether one block away can be considered "near" 25xx Fremont Avenue North, such that the search of the Cadillac was within the scope of the search warrant.  For the reasons discussed below, the Court concludes that it was.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend IV.  To that end, every search warrant must be supported by probable cause, supported by a sworn affidavit, and describe with particularity the place to be searched and the items or persons to be seized.  *Id.*  When determining whether a search exceeds the scope of a warrant, courts "look[] to the fair meaning of the warrant's terms." *United States v. Johnson*, 640 F.3d 843, 845 (8th Cir. 2011).  This is consistent with the standard of "practical accuracy," not hypertechnicality, that is required for a warrant to be

5

sufficiently particular.  *See United States v. Peters*, 92 F.3d 768, 769–70 (8th Cir. 1996) (quotation omitted).

 "Near" is defined as "close to; not far away, as a measure of distance." Black's Law Dictionary (10th ed. 2014).  Under the fair meaning of this definition, the Court finds it was not unreasonable for the searching officers to consider the Cadillac "near" 25xx Fremont Avenue North, even though it was parked a block away.  The Cadillac was "close to" and "not far away" from Matthews' residence.  Though Matthews urges the Court to construe "near" to mean no farther than the street or alley adjacent to 24xx Fremont Avenue North, the Court believes that definition is too narrow.

Matthews also argues that "[i]t is not common to park on a separate block from one's residence."  (Def.'s Mem. Supp. Mot. Suppress at 7 [Doc. No. 40].)  As a practical matter, Matthews' position does not account for the reality of urban environments in which there might be parking restrictions or other cars parked along a street.  Moreover, the question is not whether parking a block away from one's residence is commonplace; the question is whether the Cadillac was parked "near" 25xx Fremont Avenue North.

Some of Matthews' authority is distinguishable from the present case because the warrants in those cases authorized only searches of "premises," not vehicles.  *E.g.*, *United States v. Bulgatz*, 693 F.2d 728, 730 n.3 (8th Cir. 1982).  Here, however, the warrant specifically mentioned, described, and authorized a search of the Cadillac.  Moreover, the court in *Bulgatz* noted that it was "settled law" that a warrant for a search of premises includes cars on the premises, and thus did not suppress evidence on that basis.  *Id.*

Another case cited by Matthews, *United States v. Brooks*, 645 F.3d 971 (8th Cir.

6

2011), is inapplicable for similar reasons. *Brooks* involved whether officers violated the Fourth Amendment by entering the backyard and staircase of an apartment building. *Id.* at 975. To the extent Matthews suggests *Brooks* stands for the proposition that a vehicle located outside of private curtilage or the suspect's premises does not fall within the scope of a warrant, this argument overlooks the fact that the warrant here authorized a search of the Cadillac, not just the premises.

Finally, Matthews asserts that the warrant could have been written to allow the search of the Cadillac wherever it may have been found. *See United States v. Martinez-Cortes*, 566 F.3d 767, 769 (8th Cir. 2009). Such language arguably may have been the better language to use, but it was not required in this instance. *See United States v. Horn*, 187 F.3d 781, 788 (8th Cir. 1999) ("[T]he degree of specificity required will depend on the circumstances of the case and on the type of items involved."). Moreover, given the other descriptors of the motor vehicle authorized to be searched that were included in the warrant—namely, the car make, registration, and license plate information—there was little risk that the searching officers would not be able to identify the correct vehicle.

In sum, the Court concludes that the executing officers did not exceed the scope of the warrant.

### B. The *Leon* Good Faith Exception

The Government argues that even if the search of Matthews' vehicle exceeded the scope of the search warrant, the evidence seized would be admissible under the *Leon* good-faith exception. "Under the *Leon* good-faith exception, disputed evidence will be admitted if it was objectively reasonable for the officer executing a search warrant to

7

have relied in good faith on the judge's determination that there was probable cause to issue the warrant." *United States v. Hudspeth*, 525 F.3d 667, 676 (8th Cir. 2008) (internal quotation marks omitted). As a threshold matter, *Leon* applies "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate *and acted within its scope*." *United States v. Leon*, 468 U.S. 897, 920 (1984) (emphasis added).

Despite *Leon*'s language that the good faith exception applies only when officers act within the scope of a warrant, courts have nonetheless applied the good faith exception when the searching officers made an "honest mistake" in exceeding the scope of the warrant, *see United States v. Houck*, 888 F.3d 957, 960–61 (8th Cir. 2018) (quoting *Maryland v. Garrison*, 480 U.S. 79 (1987)); or acted in objective good faith in conducting the search, *United States v. Biles*, 100 F. App'x 484, 493–94 (6th Cir. 2004); *United States v. Gorman*, 104 F.3d 272, 275 (9th Cir. 1996). The "honest mistake" language in *Houck* originated in *Maryland v. Garrison*, 480 U.S. 79 (1987), which was decided after *Leon*. In *Garrison*, the Supreme Court considered whether a police search went beyond the authorized extent of the search. 480 U.S. at 86. The Court focused on the reasonableness of the officer's conduct and reiterated "the need to allow some latitude for honest mistakes that are made by officers in the dangerous and difficult process of making arrests and executing search warrants." *Id.* at 87–88.

In the present case, even if the searching officers exceeded the scope of the search warrant in searching the Cadillac, any mistake that the Cadillac was not near 25xx Fremont Avenue because it was parked a block away was an honest mistake. It was

reasonable for the officers to believe that the Cadillac, which was specifically described in the search warrant and initially parked in front of Matthews' residence, remained within the scope of the warrant even after Matthews parked it a block away. Thus, the officers' interpretation of the language of the warrant was not unreasonable. Nor is there any evidence of bad faith. Consequently, the Court concludes that the evidence seized from the Cadillac should not be suppressed.

### C.    The Automobile Exception

The Government argues, as an alternative ground on which to deny the motion, that evidence seized from the Cadillac is admissible under the automobile exception to the warrant requirement. "Under the automobile exception to the Fourth Amendment's warrant requirement, a police officer who has lawfully made a roadside stop of a vehicle may search the passenger compartment and trunk of that vehicle if probable cause exists to believe that contraband or evidence of criminal activity is located inside the vehicle." *United States v. Walker*, 840 F.3d 477, 483 (8th Cir. 2016). "Probable cause for a search under the automobile exception exists if the facts and circumstances known to the officers when they began the search were sufficient in themselves for a person of reasonable caution to believe that contraband or evidence of criminal activity was present in the vehicle." *Id.*

The Government asserts that Deputy Howe had probable cause to conduct a traffic stop of Matthews' car because of the inoperative headlight. It is true that "any traffic violation, however minor, provides probable cause for a traffic stop." *United States v. Bloomfield*, 40 F.3d 910, 915 (8th Cir. 1994). But Deputy Howe testified that he

9

activated his lights and approached Matthews' car because of the dispatcher's

instructions, not because of the inoperative headlight. Deputy Howe's testimony was

equivocal as to whether he noticed the headlight was not working before he approached

Matthews' car. Therefore, the Court cannot conclude that the inoperative headlight

provided Deputy Howe with probable cause to initiate a traffic stop.


Accordingly, based on the files, records, and proceedings herein, **IT IS HEREBY**

**RECOMMENDED** that Defendant Michael Matthews' Motion for Suppression of

Evidence Obtained as a Result of Search and Seizure [Doc. No. 25] be **DENIED**.


Dated: April 22, 2019                         s/ *Hildy Bowbeer*
                                              HILDY BOWBEER
                                              United States Magistrate Judge


**NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the
District Court and is therefore not appealable directly to the Eighth Circuit Court of
Appeals.

Under D. Minn. LR 72.2(b)(1), "a party may file and serve specific written objections to
a magistrate judge's proposed finding and recommendations within 14 days after being
served a copy" of the Report and Recommendation. A party may respond to those
objections within 14 days after being served a copy of the objections. LR 72.2(b)(2).
All objections and responses must comply with the word or line limits set forth in
LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under
advisement 14 days from the date of its filing. If timely objections are filed, this Report
and Recommendation will be considered under advisement from the earlier of:
(1) 14 days after the objections are filed; or (2) from the date a timely response is filed.